# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JAMES J. DONELON

VERSUS

JESSICA K. ALTMAN

CIVIL ACTION

20-604-SDD-EWD

## RULING

Pending before the Court is the *Motion to Dismiss Plaintiff's Amended Complaint*[1] filed by Defendant Jessica K. Altman, the Insurance Commissioner of the Commonwealth of Pennsylvania, in her capacity as Statutory Rehabilitator ("the Rehabilitator"). Plaintiff James J. Donelon, the Commissioner of Insurance for the State of Louisiana ("Donelon" or "Plaintiff") filed an *Opposition*,[2] to which the Rehabilitator filed a *Reply*.[3] For the following reasons, the Rehabilitator's *Motion*[4] shall be GRANTED and Plaintiff's claims dismissed without prejudice.

## I.     FACTUAL BACKGROUND

Senior Health Insurance Company of Pennsylvania, or "SHIP," is an insolvent long-term care insurance company that the Commonwealth Court of Pennsylvania placed in rehabilitation in January 2020 after a long financial decline.[5] The rehabilitation process was established under Pennsylvania law, specifically the Pennsylvania Insurance Department Act ("PID Act"), to provide a regulatory scheme for handling insolvent insurers

---

[1] Rec. Doc. No. 11.
[2] Rec. Doc. No. 20.
[3] Rec. Doc. No. 24.
[4] Rec. Doc. No. 11.
[5] Rec. Doc. No. 1, p. 5, ¶ 13.
69052

while protecting the interests of the insureds, creditors, and the public generally.[6] A similar statute – the Rehabilitation, Liquidation, Conservation Act ("RLCA")[7] – applies to insurers in Louisiana. Defendant Jessica K. Altman, as the Insurance Commissioner for Pennsylvania, acts as the Rehabilitator for SHIP. The Rehabilitator is bound to propose a plan that will increase SHIP's revenues and decrease its liabilities, subject to the approval of the Commonwealth Court. Two such proposed plans have been filed: an initial Proposed Plan of Rehabilitation ("Initial Plan") on January 29, 2020, and an Amended Plan on October 21, 2020.[8] These proposed plans are the subject of the instant action.

Commissioner Donelon asserts that the proposed plans include "a menu of policy changes. . .any of which would materially alter the rates charged to and paid by SHIP policyholders and/or the benefits accorded to the policyholders under their respective existing policies."[9] Donelon objects to these changes because of the possibility that they could be imposed "without the approval of any of the departments of insurance in the states. . .without regard to whether the plan violates the laws of the respective states and jurisdictions."[10] The relief sought by Donelon is twofold: first, a declaratory judgment forbidding the SHIP plan from altering rates and benefits for Louisiana policyholders without the approval of the Commissioner, and second, a permanent injunction forbidding the imposition of a rehabilitation plan that violates Louisiana laws and regulations.[11]

The Rehabilitator filed the instant *Motion to Dismiss*, asserting a bevy of arguments

---

[6] *See FBT Bancshares, Inc. v. Mutual Fire, Marine, and Inland Ins. Co.,* No. 95-1702, 1995 WL 599039 at *4 (E.D. La. Oct. 11, 1995).

[7] La. Stat. Ann. §22:2001, *et seq (2012)*.

[8] Rec. Doc. No. 10, ¶ 18. The Court takes judicial notice of the fact that, since the parties filed their briefs, a Second Amended Plan was filed on May 3, 2021 (See https://www.insurance.pa.gov/Regulations/LiquidationRehab/Documents/SHIP/SHIP_MAY_18_2021_SECOND_AMENDED_REHABILITATION_PLAN.pdf).

[9] Rec. Doc. No. 10, p. 3-4, ¶ 19.

[10] *Id.* at p. 4, ¶ 10.

[11] *Id.*

69052

against what it calls Donelon's "preemptive collateral attack" on SHIP's rehabilitation plan. In short, the Rehabilitator complains that Donelon's case is fatally flawed because it "complains of a speculative injury that has not occurred and may never occur, suffers from fatal jurisdictional infirmities, and strives to intervene impermissibly with a pending state court proceeding . . ."[12] After reviewing the briefs of the parties, the materials referenced in the *Amended Complaint*, and the applicable law, the Court agrees with the Rehabilitator that Donelon has failed to establish that his claims are justiciable.

## II.    LAW AND ANALYSIS

### A.  Motions Under Federal Rule of Civil Procedure 12(b)(1)

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.'"[13] "A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)."[14] Therefore, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.[15]  Ultimately, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."[16]

---

[12] Rec. Doc. No. 11-1, p. 2.
[13] *Crenshaw-Logal v. City of Abilene, Texas*, 436 Fed.Appx. 306, 308 (5th Cir. 2011) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011); Fed.R.Civ.P. 12(h)(3)).
[14] *Wagster v. Gautreaux*, 2014 WL 3546997, at *1 (M.D. La. July 16, 2014) (quoting *Hall v. Louisiana, et al*, 974 F.Supp.2d 978, 985 (M.D. La. Sept. 30, 2013)) (citing *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir. 1992)).
[15] *Lewis v. Brown*, 2015 WL 803124, at *3 (M.D. La. Feb. 25, 2015)(citing *Thompson v. City of Waco, Texas*, 764 F.3d 500 (5th Cir. 2014)).
[16] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

69052

"Article III standing is a jurisdictional prerequisite."[17]  If a plaintiff lacks standing to bring a claim, the Court lacks subject matter jurisdiction over the claim, and dismissal under Rule 12(b)(1) is appropriate.[18] The party seeking to invoke federal jurisdiction bears the burden of showing that standing existed at the time the lawsuit was filed.[19] Article III of the Constitution limits federal courts' jurisdiction to certain "cases" and "controversies." "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."[20]  "One element of the case-or-controversy requirement" is that plaintiffs "must establish that they have standing to sue."[21] The United States Supreme Court has held that "the irreducible constitutional minimum of standing contains three elements"[22]:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[23]

---

[17] *Crenshaw-Loga*l, 436 Fed.Appx. at 308 (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. at 101, and *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989)).

[18] *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997).

[19] *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Ramming*, 281 F.3d at 161.

[20] *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (internal quotation marks omitted); *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (internal quotation marks omitted); *see, e.g., Summers v. Earth Island Institute*, 555 U.S. 488, 492-493 (2009).

[21] *Raines,* 521 U.S. at 818, 117 S.Ct. 2312; *see also Summers,* 555 U.S. at 492-493, *DaimlerChrysler Corp.,* 521 U.S. at 342, 126 S.Ct. 1854; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[22] *Lujan,* 504 U.S. 555, 560–61 (1992).

[23] *Id*. (internal citations and quotations omitted).

69052

To establish Article III standing, an injury must be "concrete, particularized, and actual or imminent."[24] A particularized injury is one which "affect[s] the plaintiff in a personal and individual way."[25] "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending."[26] "Allegations of *possible* future injury"[27] do not suffice.

Related to standing is ripeness, which is "a question of timing."[28] To be justiciable, a case must be "ripe," meaning "not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"[29] Ripeness ensures that federal courts do not decide disputes that are "premature or speculative."[30] A case becomes ripe when it "would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now."[31] The ripeness inquiry reflects "'Article III limitations on judicial power' as well as 'prudential reasons for refusing to exercise jurisdiction.'"[32] Ripeness is part of subject matter jurisdiction, which must be established by the party invoking federal jurisdiction.[33]

---

[24] *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, —— (2010).

[25] *Gill v. Whitford*, 138 S. Ct. 1916, 1920 (2018) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, and n. 1 (1992).

[26] *Lujan,* 504 U.S. at 564, n.2 (1992).

[27] *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

[28] *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974).

[29] *Trump v. New York,* 141 S. Ct. 530, 535 (2020)(quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

[30] *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) (citing *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000)).

[31] *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010).

[32] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010)(quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)).[1]

[33] *Abdelhak v. City of San Antonio*, No. SA-09-CA-804-FB, 2011 13124298 at *10 (W.D. Tex. Dec. 6, 2011).

69052

## B.  Analysis

In the Rehabilitator's view, this matter is not yet ripe, and Donelon has not demonstrated that he has suffered an injury that gives rise to standing. Thus, she argues that a ruling from this Court would be an impermissible advisory opinion because Donelon "seeks declaratory relief based on a **proposed** rehabilitation plan that both parties agree can materially change."[34] Donelon counters that the "case or controversy standard differs in an action for a declaratory judgment."[35] That is true, to some extent, but not true enough to save this suit.

"The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'"[36] "When considering a declaratory judgment action, a district court must engage in a three-step inquiry."[37] The court must ask (1) "whether an 'actual controversy' exists between the parties" in the case; (2) whether it has authority to grant declaratory relief; and (3) whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action."[38]

Although "[d]eclaratory judgments cannot be used to seek an opinion advising what the law would be on a hypothetical set of facts ..., declaratory judgment plaintiffs need not actually expose themselves to liability before bringing suit."[39] "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that

---

[34] Rec. Doc. No. 11-1, p. 8 (emphasis original).
[35] Rec. Doc. No. 20, p. 5.
[36] *Frye v. Anadarko Petroleum Corp.,* 953 F.3d 285, 293–94 (5th Cir. 2019).
[37] *Orix Credit All., Inc. v. Wolfe,* 212 F.3d 891, 895 (5th Cir. 2000).
[38] *Id.*
[39] *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009).
69052

there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[40]

This Court finds that none of the above-cited articulations of justiciability in the declaratory judgment context obviate the need for the plaintiff to show a concrete, non-speculative injury that gives rise to a case or controversy under Article III. Indeed, the United States Court of Appeals for the Fifth Circuit has clearly held that the Declaratory Judgment Act's "requirement of a 'case of actual controversy' refers to an Article III case or controversy."[41] Donelon fails to demonstrate such an injury. He essentially complains that the Rehabilitator *may* propose a plan that *could* have the effect of materially altering rates and/or benefits for Louisiana policyholders. After Donelon's initial *Complaint* was filed, an amended rehabilitation plan was proposed, leading Donelon to file an *Amended Complaint* that addressed the changes to the proposed plan. The Court takes judicial notice of the fact that, after the briefing on the instant motion, yet another amended proposed plan was filed by the Rehabilitator on May 3, 2021. The ongoing amendments to the plan render it impossible for Donelon to demonstrate that his injury is concrete and imminent or certainly impending. While "imminence is concededly a somewhat elastic concept,"[42] it is simply common sense that one cannot be injured by the provisions of a plan that does not yet exist.

Donelon attempts to sidestep this reality by arguing that, no matter what the contours of the rehabilitation plan when it is finalized, his injury is concrete now because

---

[40] *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. at 127 (2007)(quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).
[41] *Frye v. Anadarko Petroleum Corp.,* 953 F.3d 285, 294 (5th Cir. 2019)(citing *MedImmune*, 549 U.S. at 126).
[42] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).
69052

"the Plan's stated intentions are unequivocal,"[43] namely to "cram down the rate increases and benefit modifications."[44] In other words, Donelon contends, his injury arises out of the existence of a rehabilitation plan, generally. This is not a concrete and particularized injury that can bestow upon Donelon Article III standing.

Further, it is apparent that this case is not ripe; it is "riddled with contingencies and speculation that impede judicial review."[45] Without further factual development in the form of a finalized rehabilitation plan, it would be premature for this Court to assess the legality of the plan's effects. Donelon's repeated conjecture that the plan will undoubtedly harm Louisiana policyholders *in some way* does not suffice. This suit is the equivalent of challenging the constitutionality of a law before the law has even passed. The jurisdiction of this Court is not properly invoked to adjudicate circumstances that may or may not occur.

Therefore, because Plaintiff has failed to demonstrate that his claims are justiciable, they must be dismissed. In this case, the Court sees fit to dismiss his claims without prejudice, allowing for them to be reasserted if and when a finalized rehabilitation plan is in place. Because the Court's decision is based on justiciability, it does not at this juncture reach the other arguments raised by the Rehabilitator.

---

[43] Rec. Doc. No. 20, p. 7.
[44] *Id*. at p. 6.
[45] *Trump v. New York*, 141 S. Ct. 530, 535 (2020).
69052

III.    **CONCLUSION**

For the above reasons, the Rehabilitator's *Motion to Dismiss Plaintiff's Amended Complaint*[46] is hereby GRANTED and Plaintiff's claims dismissed without prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>September 15, 2021</u>.

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[46] Rec. Doc. No. 11.

69052